UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND

KIMBERLY HEMPHILL,

     Plaintiff,

v.                                   C. A. No. L-00-1616 (BEL)

JAMES V. ALUISI, et al.,

     Defendants.

_____/

## STATUS REPORT

Pursuant to the Court's November 20, 2000 ORDER, the parties submit this report of the status of this litigation.

On June 28, 2000, defendants filed a to motion to dismiss or, in the alternative, for summary judgment. On July 24, the Court entered an Order directing limited discovery and directing plaintiff's counsel to contact the General Services Administration to determine the identity of the federal officers whom plaintiff claimed had falsely arrested in her in Virginia.[1]

On August 3, 2000, defendants took the deposition of plaintiff Kimberly Hemphill. On August 8, 2000, plaintiff took the deposition of former Sheriff James Aluisi pursuant to a notice of deposition under Fed R. Civ. Pr. 30(b)(6). Subsequently, plaintiff sought leave to depose someone other than Sheriff Aluisi as a Rule 30(b)(6) witness, based on Sheriff Aluisi's lack of knowledge concerning relevant procedures and practices of the Department.

On August 15, 2000, the Court entered an order granting plaintiff leave to depose a

---

[1] GSA never responded to plaintiff's counsel's request for the identifies of the three agents. Plaintiff's suit against the three unnamed agents was dismissed by order the U. S. District Court for the Eastern District of Virginia on September 8, 2000. See attached Memorandum Order of Judge Gerald Bruce Lee.

representative of the Prince George's County Sheriff's Department who was competent to testify about certain policies and procedures of the Department that are relevant to plaintiff's claims in this lawsuit. The order also permitted plaintiff to depose Corporal Stephanie Walker-Hicks of the Department. Finally, the August 15 Order allowed plaintiff to respond, after completion of her depositions, to defendant's supplemental motion to dismiss the second amended complaint, which defendants filed on August 24, 2000.

The parties are presently attempting to schedule a Rule 30(b)(6) deposition and the deposition of Ms. Walker-Hicks within the next 3 weeks. Plaintiff's counsel has been unable to schedule the additional depositions due to illness, the departure of two associates working on Ms. Hemphill's Virginia and Maryland cases, and the unanticipated demands of other litigation since plaintiff's counsel returned to the office from a 3-week absence in September.

Accordingly, plaintiff Hemphill requests that the Court permit plaintiff until December 31, 2000 to complete these two depositions, that plaintiff be permitted to respond to defendant's supplemental motion on or before January 15, 2001, and that defendants' reply, if any, be filed 15 days thereafter. The parties tentatively agreed today to complete the depositions on December 14 and 20, 2000.

Respectfully submitted,

*Barbara Kraft*

Barbara Kraft   Fed. Bar No. 09105
Beins, Axelrod & Kraft, P.C.
1717 Massachusetts Ave., NW   Suite 704
Washington, DC   20036
(202) 328-7222
Fax (202) 328-7030
Attorneys for Plaintiff

*Frank W. Mann/bk*

Frank W. Mann
Assistant Attorney General
Office of the Attorney General
200 St. Paul Place, 20th Floor
Baltimore, MD 21202
(410) 576-6576
Fax (410) 576-6955
Attorneys for Defendants

Approved:

January 22 2001
Benson Legg

2

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

SEP 1 3 2000

KIMBERLY HEMPHILL,                    )
                                      )
                Plaintiff,            )
                                      )
v.                                    )    Civil Action No. 00-1203-A
                                      )
                                      )
THREE UNNAMED FEDERAL AGENTS,         )
                                      )
                Defendants            )
                                      )
                                      )

**MEMORANDUM ORDER**

THIS MATTER is before the Court on Defendants' Motion to
Dismiss or, in the Alternative, for Summary Judgment.  For the
reasons stated below, it is hereby

ORDERED that Defendants' Motion to Dismiss is GRANTED with
regard to Counts II, III, and IV; it is further

ORDERED that Defendants' Motion for Summary Judgment is
GRANTED with regard to Count I.

Plaintiff Kimberly Hemphill was the victim of identity theft
and spent two days in jail before she could convince the jailor
that she was not the "Kimberly Hemphill" named in a valid arrest
warrant.  She has filed a number of lawsuits in federal courts
stemming from this harrowing forty-eight hour incarceration, each
alleging violations of her constitutional rights.  As will be
shown herein, however, the law will not permit her to recover in

Att. to. Civ. No
L-00-1616

this particular suit against federal officers, as a victim of identity theft, because the officers were acting pursuant to a valid state court warrant.

The issue presented is whether Plaintiff's Complaint should be dismissed for failure to state a claim or as a matter of law, where Ms. Hemphill alleges, among other things, that three unnamed federal officers violated her constitutional rights, under color of state law, by erroneously arresting her at her place of employment utilizing an arrest warrant meant for another individual who had, alarmingly, stolen Ms. Hemphill's identity.

The arrest was perfected despite the fact that there was information available to the arresting officers, at the time she was taken away from her office in handcuffs, relating to the wrongful appropriation of Ms. Hemphill's identity. Moreover, Ms. Hemphill's employer was understandably impacted by this dramatic event at the office and later fired her. These facts are very disturbing and undoubtedly affected Ms. Hemphill in a negative manner. Nevertheless, the Court, upon consideration of the applicable law, holds that none of Plaintiff's state law counts set forth an adequate claim for relief. Moreover, Ms. Hemphill does not have evidence to support her 42 U.S.C. § 1983 claim against the federal officers sufficient to create a jury question for trial.

2

## I.  BACKGROUND

On or about September 2, 1998, Plaintiff Kimberly Hemphill
was arrested at her workplace in Reston, Virginia.  She was
arrested by Federal Protective Services ("FPS") officers and
transported to the Fairfax County Adult Detention Center ("ADC"),
where a warrant of arrest for extradition was issued by a
Virginia State Magistrate and served upon Plaintiff.  Plaintiff
was detained overnight in the ADC and the next day she waived
extradition and was returned to Prince George's County, Maryland.

Plaintiff was not the true subject of the arrest warrant.
The warrant was for another Kimberly Hemphill.  Moreover, the
evidence shows that the arresting officers had information at
their disposal, in the form of photographs and written
documentation, that could have drawn into question the propriety
of Ms. Hemphill's arrest.  Whatever the case, when Plaintiff
finally arrived at the Sheriff's Office Intake Center for Prince
George's County, she convinced the booking officer that she was
not the subject of the warrant.  Consequently, she was released
from custody at approximately 1:30 a.m. on September 4, 1998.
Before Plaintiff was released, however, a sheriff ordered her to
sign, and she did sign, a form waiving any rights for civil
relief against Prince George's County, the State of Maryland, and
James V. Aluisi, Sheriff of Prince George's County.

Subsequent to her release, Plaintiff sued James V. Aluisi,

3

who was former Sheriff of Prince George's County, the present
Prince George's County Sheriff Alonzo Black, II, and the State of
Maryland (collectively "State Defendants") in federal district
court in the Eastern District of Virginia.  She also named as
defendants Carl R. Peed and Stan G. Barry, the former and present
Sheriff of Fairfax County, respectively.  Finally, Plaintiff sued
unnamed agents of the State of Maryland, various officers and
officials of Fairfax and Prince George's counties, and the
Commonwealth of Virginia.  That case was transferred by this
Court to the United States District Court for the District of
Maryland by Order dated May 23, 200 and is currently pending.

The present Complaint, filed initially in the District of
Columbia but transferred to the Eastern District of Virginia in
June 2000, specifies merely "Three Unnamed Federal Agents" as
Defendants.  It alleges all of the following:

(1) Violations of 42 U.S.C. § 1983 (Count I);[1]

(2) False arrest and malicious prosecution (Count II);

(3) Intentional infliction of emotional distress (Count

_____

[1]"By arresting and detaining plaintiff wrongfully,
defendants knowingly and intentionally violated her right to be
free from unreasonable searches and seizures under the Fourth
Amendment to the U.S. Constitution."  Compl. at 4.

"By arresting and detaining plaintiff wrongfully, defendants
knowingly and intentionally violated her right to due process of
law, to the equal protection of the laws, and to unreasonable
searches and seizures as guaranteed by the Fifth and Fourteenth
Amendments to the U.S. Constitution and subjects them to
liability for damages under 42 U.S.C. 1983."  Id.

4

III); and

(4) False imprisonment (Count IV).

## II.  **STANDARDS OF REVIEW**

### A.  *Failure to State a Claim*

The purpose of a motion under Federal Rule of Civil
Procedure ("FRCP") 12(b)(6) is to test the formal sufficiency of
the statement of the claim; it is not a procedure for resolving a
contest about the facts or merits of the case.  *See generally*
*Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F. 2d 729 (9th Cir.
1987).  Therefore, the provision must be read in conjunction with
FRCP 8(a), which outlines the requirements for federal court
pleadings.  Specifically, FRCP 8(a)(2) states that a "pleading
which sets forth a claim for relief . . . shall contain . . . a
short and plain statement of the claim showing that the pleader
is entitled to relief."  FED. R. CIV. P. 8(a)(2).

When determining whether to grant a 12(b)(6) motion, the
court should consider only the allegations in the complaint,
along with any matters of public record, orders, and exhibits
attached to the complaint.  *See* 5A CHARLES ALAN WRIGHT & ARTHUR R.
MILLER, FEDERAL PRACTICE AND PROCEDURE § 1356 (2d ed. 1990).  While
motions to dismiss via FRCP 12(b)(6) are viewed with disfavor and
construed in the light most favorable to the non-movant, *see id,*
the Court should not accept as true allegations that are

5

unsupported and conclusory. *See Labram v. Havel*, 43 F.3d 918 (4th Cir. 1995).

## B. *Summary Judgment*

Under FRCP 56, a court should grant summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c).

Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). The opposing party may not rest upon the mere allegations or denials of her pleading, but must set forth specific facts showing that there is a genuine issue for trial. *See* FED. R. CIV. P. 56(e).

The mere existence of some alleged factual dispute between the parties, however, will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See id.* at 248. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly

6

preclude the entry of summary judgment. *See id.*

In determining whether a party is entitled to summary judgment, the record is viewed in the light most favorable to the nonmoving party. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

## III.  **DISCUSSION**

### A.  *Defendants' Argument*

In their motion, Defendants argue that Plaintiff's claims suffer from several defects. First, Defendants contend that this Court lacks subject matter jurisdiction over Plaintiff's constitutional deprivation claims against Defendants in their official capacities. *See* FED. R. CIV. P. 12(b)(1). Such claims, Defendants say, actually lie against the federal sovereign, which has not waived its immunity in this matter. *See Randall v. United States*, 95 F.3d 339, 345 (4th Cir. 1996). Moreover, Defendants point out that the statutes in question, 42 U.S.C. § 1983 and 28 U.S.C. § 1343, apply only to employees acting under color of state law -- not federal agents. *See Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 409 F.2d 718, 719 n.1 (2d Cir. 1969). Consequently, Defendants assert that any claims against the "Three Unnamed Federal Agents" in their individual capacities must also be dismissed.

Second, Defendants submit that Plaintiff fails to state a

7

claim pursuant to FRCP 12(b)(6). Exhaustion of administrative
remedies, according to Defendants, is a jurisdictional
prerequisite to a suit in district court under the Federal Tort
Claims Act ("FTCA"). *See* 28 U.S.C. § 2671. *See generally McNeil
v. United States,* 508 U.S. 106 (1993). Plaintiff, Defendants
claim, failed to comply with the administrative process
requirements by failing to present a claim to the appropriate
federal agency, and leaving out the details in her notice that
were essential to the government's investigation of the
Complaint. Furthermore, according to Defendants, she failed to
specify a sum certain for her claim, which is required by the
regulations. *See Ahmed v. United States*, 30 F.3d 514, 516-17
(4th Cir. 1994).

Third, Defendants assert that the arrest of an individual
pursuant to a valid arrest warrant does not violate the
Constitution, even if the individual is later determined to be
innocent of the charges. *See generally Baker v. McCollan*, 443
U.S. 137 (1979); *Porterfield v. Lott*, 156 F.3d 563, 568-70 (4th
Cir. 1998). More importantly, even if the Court were to find
that Plaintiff had established a constitutional violation,
Defendants say, the individual Defendants are entitled to
qualified immunity on all counts. Defendants insist that
Plaintiff's inability to plead and prove the existence of a
clearly established constitutional right to have federal law

8

enforcement officials frustrate a lawful arrest -- based upon
probable cause -- is dispositive of the qualified immunity issue
in this matter.

## B.  *Plaintiff's Opposition*

In response to Defendants' motion to dismiss, Plaintiff
first argues that she may bring a 42 U.S.C. § 1983 claim against
federal agents if the agents were acting in consort with state
actors and under color of state law.  *See Brown v. Stewart*, 910
F. Supp. 1064, 1068-69 (W.D. Pa. 1996).  Plaintiff then contends
that she has exhausted her administrative remedies under the FTCA
as required by 28 U.S.C. § 2675(a).  In this capacity, she
submits that she filed an administrative claim on July 1, 1999,
via a letter to the Attorney General.[2]  Because she received no
response to her Complaint from the Attorney General within six
months of filing, she re-filed her claims against the federal
agents on January 18, 2000.

---

[2]Attached to the letter was a copy of the Complaint
Plaintiff intended to file, which included the factual basis for
Plaintiff's claims.  Moreover, the attached Complaint provided a
specific sum requested as compensation for the alleged unlawful
acts of Defendants.  Taken in total, the letter and the Complaint
-- despite the fact that they were sent to the Department of
Justice and not the General Services Administration (which
oversees the FPS) -- may have amounted to enough for purposes of
administrative notice under the FTCA.  *See* 28 C.F.R. § 14.2; *55
Motor Ave. Co. v. Liberty Indus. Finishing Corp.*, 885 F. Supp.
410, 415-18 (E.D.N.Y. 1994).  The Court need not address this
issue, however, as the dismissal of the relevant counts is
granted on more substantive grounds.  *See infra.*

With regard to these particular Defendants, Plaintiff asks
the Court to note that they are indeed the officers who
physically arrested her. In that capacity, their actions were
reckless and outrageous, Plaintiff says, because they possessed a
photograph with the warrant that did not look like anything like
Ms. Hemphill. In addition, Plaintiff points out that the agents
were offered a letter from a Montgomery County, Maryland State's
Attorney stating that Ms. Hemphill was a victim of identity
theft. This letter would have exonerated her. The arresting
officers refused to read the letter prior to or during the
arrest.

Moreover, Plaintiff argues that qualified immunity does not
bar her claims against Defendants in their individual capacity.
Federal officials, she claims, are not immune if their actions
are objectively unreasonable, as is the case here. *See Malley v.
Briggs*, 475 U.S. 335, 341 (1986). Also, Plaintiff submits that
she states valid claims for false arrest, malicious prosecution,
intentional infliction of emotional distress, and false
imprisonment.

## C. *Analysis*

1. Counts II, III, and IV (State Law Torts)

Taking the state common law torts first, the Court holds
that Plaintiff fails to meet the elements of each tort in a

10

manner sufficient to survive Defendants' motion to dismiss.  With
specific regard to false arrest (Count II) and false imprisonment
(Count IV), Virginia law requires proof of the restraint by one
person of the physical liberty of another without adequate legal
justification.  *Cf. Jordan v. Shands*, 255 Va. 492, 497 (1998).
Here, Plaintiff's arrest, while mistaken, was undertaken pursuant
to a valid warrant that Defendants' reasonably relied on in order
to effectuate the arrest.  *See infra*.

    To sustain a malicious prosecution claim (Count II) in
Virginia, it must be shown both that the prosecution was
instituted without probable cause, and that it was instituted
with actual malice, *i.e.*, with a malicious motive.  *See Freezer
v. Miller*, 163 Va. 180, 200 (1934); *see also Motley v. Virginia
Hardward and Manuf. Co.*, 287 F. Supp. 790, 792 (W.D. Va. 1968).
Defendants here, however, did not institute any prosecution of
Plaintiff with actual malice.  While they may have acted
negligently by failing to study the available information on the
theft of Ms. Hemphill's identity, *see infra*, no evidence suggests
that their inaction was grounded in malice.

    Finally, because injury to the mind or emotions can be
easily feigned, intentional infliction of emotional distress
(Count III) is a disfavored tort under Virginia law.  *See Russo
v. White*, 241 Va. 23, 26 (1991).  In order to state a claim for
intentional infliction of emotional distress, a plaintiff must

11

allege the following: (1) the wrongdoer's intentional or reckless conduct; (2) outrageous or intolerable conduct; (3) a causal connection; and (4) severe emotional distress. *See Womack v. Eldridge*, 215 Va. 338, 342 (1974).

Even assuming Ms. Hemphill has adequately alleged elements (1) and (3) in her Complaint, which she has not done, *see infra*, Plaintiff has failed to sufficiently allege either element (2) or (4). Defendants did not act "outrageously" or "intolerably" in conducting the arrest. Instead, it appears Defendants carried out their arrest duties in a good faith manner so as to comply with the mandate of an official arrest warrant. Moreover, Ms. Pearson does not allege in her Complaint emotional distress that could be categorized as "severe" under Virginia law.

## 2.   Count I (42 U.S.C. § 1983)

In relevant part, the Fourth Amendment to the Constitution secures the right of the people to protection from "unreasonable searches and seizures." U.S. CONST. amend. IV. The doctrine of qualified immunity protects government officials from civil damages in 42 U.S.C. § 1983 actions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

The Supreme Court recently set forth a two-part test for

12

analyzing a claim of qualified immunity in the context of an alleged constitutional violation. *See Wilson v. Layne*, 119 S. Ct. 1692, 1696-97 (1999). The evaluating court must first ascertain whether the plaintiff has alleged the deprivation of an actual constitutional right. *See id.* at 1697 (quoting *Conn v. Gabbert*, 119 S. Ct. 1292, 1295 (1999)); *see also Anderson v. Creighton*, 483 U.S. 635, 639 (1987); *Taylor v. Waters*, 81 F.3d 429, 433 (4th Cir. 1996). If so, the court proceeds to determine whether that right was clearly established at the time of the alleged infringement. *See Wilson,* 119 S. Ct. at 1697 (quoting *Conn*, 119 S. Ct. at 1295).

In order for a right to have been clearly established, "the 'contours of the right' must have been so conclusively drawn as to leave no doubt that the challenged action was unconstitutional." *Swanson v. Powers*, 937 F.2d 965, 969 (4th Cir. 1991) (quoting *Anderson*, 483 U.S. at 640). Moreover, to determine whether a right was clearly established at the time of the claimed violation, courts in this circuit need not look beyond the decisions of the Supreme Court, the Fourth Circuit, and the highest court of the state in which the case arose. *See Wallace v. King*, 626 F.2d 1157, 1161 (4th Cir. 1980). Once this determination is made, the Court must consider whether a reasonable person in the official's position would have known that his conduct would violate the identified right. *See*

13

*Anderson*, 483 U.S. at 639; *Taylor*, 81 F.3d at 433.

Plaintiff's inability to plead and prove the existence of a clearly established constitutional right to have federal law enforcement officials frustrate a lawful arrest under circumstances such as those present here is dispositive of the qualified immunity issue.  The analysis in the present matter, therefore, need not reach the second prong of the qualified immunity test.  Analogous case law is even more convincing.  For example, the United States Supreme Court decided, in *Baker v. McCollan*, that the arrest of an individual pursuant to a valid arrest warrant does not violate the Constitution -- even if the individual is later determined to be innocent of the charges. *See Baker,* 443 U.S. at 145-46.  The facts in *Baker* are very similar to those here.

In *Baker*, the plaintiff was arrested pursuant to a valid arrest warrant stemming from criminal charges generated in another county by the plaintiff's brother.  The brother had used the plaintiff's identifying information during an arrest on narcotics charges and then failed to appear for court after being released on bail.  An arrest warrant issued and, months later, the plaintiff was arrested when he was stopped for running a red light.  The plaintiff was taken into custody, despite his insistence that he was innocent, after officers compared the identifying information on his driver's license with that

14

contained in the county arrest records.  After a week, he
convinced officials that they had the wrong person and he was
released.

The Plaintiff then sued the sheriff of the county in
question pursuant to 42 U.S.C. § 1983.  The Supreme Court,
however, rejected the claim due to the presence of a valid arrest
warrant and the reasonableness of the circumstances surrounding
the arrest:

> Respondent was indeed deprived of his liberty for a
> period of days, but it was pursuant to a warrant
> conforming, for purposes of our decision, to the
> requirements of the Fourth Amendment.  Obviously, one
> in respondent's position could not be detained
> indefinitely in the face of repeated protests of
> innocence even though the warrant under which he was
> arrested and detained met the standards of the Fourth
> Amendment. . . .  But we are quite certain that a
> detention of three days over a New Year's weekend does
> not and could not amount to such a deprivation.
>
> . . . .
>
> The Fourteenth Amendment does not protect against all
> deprivations of liberty.  It protects only against
> deprivations of liberty accomplished "without due
> process of law."  A reasonable division of functions
> between law enforcement officers, committing
> magistrates, and judicial officers -- all of whom may
> be potential defendants in a § 1983 action -- is
> entirely consistent with "due process of law."  Given
> the requirements that arrest be made only on probable
> cause and that one detained be accorded a speedy trial,
> we do not think a sheriff executing an arrest warrant
> is required by the Constitution to investigate
> independently every claim of innocence, whether the
> claim is based on mistaken identity or a defense such
> as lack of requisite intent.  Nor is the official
> charged with maintaining custody of the accused named
> in the warrant required by the Constitution to perform
> an error-free investigation of such a claim.  The

15

ultimate determination of such claims of innocence is
placed in the hands of the judge and the jury.

*Id.* at 144-46 (emphasis added). The Court finds that here, as in
*Baker*, the officers participating in the arrest reasonably relied
on the Prince George's County arrest warrant. The warrant
correctly listed Plaintiff's name, race, date of birth, social
security number, height, and weight. Consequently, under the
circumstances, no constitutional violation was committed by the
fact Ms. Hemphill turned out to be innocent of the charges in the
warrant. *See Porterfield*, 156 F.3d at 568-70 (officers could not
have committed Fourth Amendment violation where arrest made
"reasonably" on basis of valid arrest warrant); *see also Gero v.
Henault*, 740 F.2d 78, 84-85 (1st Cir. 1984) (no constitutional
violation by arresting officers where plaintiff's arrest based on
probable cause and "reasonable" mistaken identity).

Moreover, while their failure to study the photograph
attached to the arrest warrant and review the letter allegedly
exonerating Plaintiff may arguably have amounted to negligence,
it certainly was not reckless; nor was it undertaken in bad
faith. Consequently, it is not actionable under 42 U.S.C. §
1983.

This is true because it is impermissible to hold law
enforcement officers liable for constitutional violations under
42 U.S.C. § 1983 where they have acted in good faith or with mere
negligence. *See Jean v. Collins*, 2000 WL 1049853, at *3 (4th

16

Cir. 2000) (Wilkinson, J., concurring). The United States
Supreme Court itself has opined that "the Due Process Clause is
simply not implicated by [the] negligent act of an official
causing unintended loss of or injury to life, liberty, or
property." *Daniels v. Williams*, 474 U.S. 327, 328 (1986). No
"deprivation" occurs on account of official negligence, as is the
case here, *see id.* at 330-33, and, consequently, officer
negligence or inadvertence cannot be actionable under 42 U.S.C. §
1983. *See Jean*, 2000 WL 1049853 at *3.

## IV.  **CONCLUSION**

In sum, while the Court recognizes the disturbing nature of
the arrest in this matter, and the emotional trauma that Ms.
Hemphill endured, Plaintiff has failed to come forward with
sufficient evidence to demonstrate a genuine issue of material
fact for which a jury could potentially return a verdict in her
favor on Count I (42 U.S.C. § 1983). Therefore, that Count is
dismissed as a matter of law. Moreover, for the reasons stated
above, Plaintiff's state law tort counts (Counts II, III, and IV)
each fail to state a claim upon which relief can be granted.

17

The Clerk is directed to forward a copy of this Order to counsel of record.

Entered this _8th_ day of September, 2000.

Gerald Bruce Lee
United States District Judge

Alexandria, Virginia
09/08/00

18