IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

```
KIMBERLY HEMPHILL          :
                           :
     v.                    :       CIVIL NO. L-00-1616
                           :
JAMES V. ALUISI, et al.    :
                           :
```

MEMORANDUM

This case stems from a truly unfortunate incident in which the plaintiff, Kimberly Hemphill, who was the victim of identity theft, was arrested on forgery charges and imprisoned for more than two days in a Virginia prison. Ms. Hemphill was innocent of the charges; the bogus checks having been negotiated by a person who had stolen plaintiff's identity. Following a transfer to Prince George's County, Ms. Hemphill was held for an additional three and a half hours in a Prince George's County detention center. Eventually, after her claims of innocence were verified, Hemphill was released by Prince George's County authorities. Prior to her release, however, Hemphill was asked to sign a release/waiver.[1]

While Hemphill initially filed a complaint alleging several claims against multiple parties, she later decided not to pursue many of her original claims. In her Second Amended Complaint,

---

[1] The waiver purported to release the State of Maryland, the Sheriff, and the Sheriff's employees of any liability in connection with Hemphill's arrest and detention.

1



Hemphill focused on two claims against James Aluisi (the former Sheriff of Prince George's County) and Alonzo Black (the current Sheriff of Prince George's County): (i) that her constitutional rights were initially violated by the wrongful arrest, and subsequently violated when she was asked to sign the waiver; and (ii) that her state constitutional due process rights were violated by the arrest (which lacked probable cause) and the policy under which she was asked to waive her rights prior to her release.

The Defendants filed a Motion to Dismiss Second Amended Complaint, or in the Alternative for Summary Judgment. Hemphill filed a brief memorandum in opposition to Defendants' motion. In an Order dated March 16, 2001, the Court sought additional information from both parties in an attempt to complete the factual record.[2] On Wednesday, May 9, 2001 this Court held a telephone conference to discuss the Defendant's Motion to Dismiss the Second Amended Complaint.[3] The parties agreed during the telephone conference that the Motion for Summary Judgment had been fully briefed and was ready for a decision on the merits.[4]

---

[2] Plaintiff responded to the Court's Order on April 13, 2001, and the Defendants filed their response on April 26, 2001.

[3] Assistant Attorney General Frank Mann and Attorney Barbara Kraft, who represents Ms. Hemphill on a *pro bono* basis, participated in the telephone conference.

[4] By an Order dated May 15, 2001, the Court reinstated the Defendants' Motion to Dismiss the Second Amended Complaint, as supplemented by the April 2001 submissions by both parties, as a

## I. Factual Background

On September 3, 1998, Kimberly Hemphill was transferred to a Prince George's County detention center following two days of incarceration in a Northern Virginia prison. Hemphill arrived at the Sheriff's Office Intake Center at approximately 10:00pm. Upon arriving at the detention center, Hemphill attempted to convince the booking officer that she had been the victim of mistaken identity and was not the individual whom the authorities were seeking.

Acting upon Hemphill's assertions of innocence, the Prince George's County Sheriff's Office initiated an investigation which ultimately verified Hemphill's claims. The Sheriff's Office released Hemphill at 1:30am on September 4, 1998.[5] At the time of her release, Hemphill was asked by Deputy Sheriff Stephanie Walker-Hicks to sign a form which purported to release the State of Maryland, the Sheriff, and the Sheriff's employees of any liability in connection with Hemphill's arrest and detention.[6] Hemphill spent little or no time reading the form, and signed it

---

Motion for Summary Judgment.

[5] Hemphill was released approximately three and a half hours after she had been brought to the detention center.

[6] The purpose of the release form was not explained to Hemphill before she was asked to sign it.

3

within seconds of receiving it.[7] After Hemphill's release, a Prince George's County Deputy gave Hemphill a ride to meet her mother and sister.

In connection with her arrest and detention, Hemphill filed suit in United States District Court for the Eastern District of Virginia against the officers who had initially arrested her. On September 13, 2000, the Eastern District of Virginia granted summary judgment to the defendants in that case. Hemphill instituted the instant suit against the current and former Sheriff of Prince George's County based primarily upon the fact that she was asked to sign the release/waiver form upon her release from the Prince George's County detention center.

Hemphill seeks (i) a declaratory judgment holding the waiver unenforceable, (ii) an injunction prohibiting Defendants from asking prisoners who are about to be released to sign release/waivers, (iii) an injunction requiring Defendants to ensure "that plaintiff is not wrongly arrested again," (iv) compensatory damages and attorney's fees.

## II. Summary Judgment Standard

The Court may grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file,

---

[7] There is no evidence that Hemphill was forced to sign the form or was told that signing the form was a condition of her release. There is also no evidence, however, that Hemphill was told that she had the right not to sign the waiver if she so desired.

4

together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); see also Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987) (recognizing that trial judges have "an affirmative obligation" to prevent factually unsupported claims and defenses from proceeding to trial.). Nevertheless, in determining whether there is a genuine issue of material fact, the Court views the facts, and all reasonable inferences to be drawn from them, in the light most favorable to the non-moving party. Pulliam Inv. Co. v. Cameo Properties, 810 F.2d 1282, 1286 (4th Cir. 1987).

### III. Analysis

a. Validity of Waiver/Release

The Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides that district courts "may declare" the rights of interested parties. The Fourth Circuit has consistently held that "district courts have great latitude in determining whether to assert jurisdiction over declaratory judgment actions." Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co., 139 F.3d 419, 422 (4th Cir. 1998). It is clear, however, that declaratory judgment actions should not be used "to try a controversy by piecemeal, or to try particular issues without settling the entire controversy..."

Aetna Cas. & Sur. Co. v. Quarles, 92 F.2d 321, 325 (4th Cir. 1937).

While the waiver/release that Hemphill signed is of questionable validity, it is clear that the Court need not decide the issue at this time. The defendants have waived the release as a defense to this action. Hemphill has not alleged that the release she signed has prevented her from pursuing any litigation, nor is there any litigation pending that would be harmed by the existence of the release. The Court declines, therefore, to assert its jurisdiction under the Declaratory Judgment Act over the matter.

b. Prospective Relief

Hemphill seeks an injunction prohibiting Defendants from asking prisoners to sign release/waiver forms before their release.[8] Defendants have stated that "there is no longer a policy at the Prince George's County Sheriff's Office to obtain release/waivers from wrongfully arrested prisoners."

It is well established that a defendant's voluntary cessation of challenged conduct does not automatically "deprive the tribunal of power to hear and determine the case, i.e., does not make the case moot." United States v. W.T. Grant Co., 345

---

[8] On its face, the policy raises several constitutional concerns. In light of the finding of mootness, however, the Court need not analyze the constitutionality of the policy.

U.S. 629, 633 (1953). The challenge may be moot, however, where the conduct in question is very unlikely to recur. DeFunis v. Odegaard, 416 U.S. 312, 318 (1974).

Based on Defendant's assertion that the policy of asking prisoners to sign release/waiver forms is both "outdated" and "likely ineffective," the Court is satisfied that the Prince George's County Sheriff's Office will not seek to utilize it again in the future. Hemphill's claim is, therefore, moot.

c. Future Wrongful Arrest

Hemphill seeks an injunction requiring Defendants to ensure "that plaintiff is not wrongly arrested again." Plaintiff has presented no evidence to suggest that Defendants Aluisi or Black, or the Prince George's County Sheriff's Office, had any role in the issuance of the warrant which resulted in Hemphill's arrest.[9] There is also no evidence that the Prince George's County Sheriff's Office maintains or manages the "relevant data bases, computer systems, [or] files" that may have been involved in connection with the original arrest warrant. Hemphill's claim shall, therefore, be DENIED.

---

[9] The warrant was issued by the Prince George's County Police, not the Prince George's County Sheriff's Office. The Prince George's County Police Department is neither an agency of, nor under the control of, the Prince George's County Sheriff's Office. MD. CODE ANN., CTS. & JUD. PROC. § 2-309(r).

d. Damages

Hemphill seeks compensatory damages of $5 million. While Hemphill's arrest was unfortunate, Hemphill has failed to present any evidence that the Prince George's County Sheriff's Office acted in a manner that would give rise to liability. The evidence suggests quite the opposite. It was the Prince George's County Sheriff's Office that investigated Hemphill's claims of innocence, and released her only a few short hours after receiving her at the Intake Center. Furthermore, because Hemphill spent only seconds signing the release/waiver form, Defendant's Policy did not contribute any time to Hemphill's incarceration. Hemphill's claim for damages and attorney's fees shall, therefore, be DENIED.

Dated this 14th day of August, 2001.

Benson Everett Legg
United States District Judge